UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 21-CV-62270-RUIZ/STRAUSS

AZURE COLLEGE, INC.,

    Plaintiff,
v.

BANK OF AMERICA CORPORATION,

    Defendant.
_____/

## REPORT AND RECOMMENDATION

THIS MATTER came before the Court upon the Motion to Dismiss Third Party Complaint ("Motion") [DE 60] filed by Third-Party Defendant, Pistus HHC, LLC ("Pistus"). The Motion has been referred to me, pursuant to 28 U.S.C. § 636(b)(1) and the Magistrate Judge Rules of the Local Rules of the Southern District of Florida, to take all action as required by law on the Motion. [DE 64]. I have reviewed the Motion, the Response [DE 63] and Reply [DE 65] thereto, and all other pertinent portions of the record. For the reasons discussed herein, I respectfully **RECOMMEND** that the Motion be **DENIED**.

## BACKGROUND

In this action, Plaintiff, Azure College, Inc. ("Azure"), has asserted a breach of contract claim[1] against Defendant, Bank of America, N.A. ("BANA"), alleging that BANA is liable for six (6) transfers, totaling $259,800, that were made from Azure's BANA account to Pistus, in November 2020, without Azure's authorization. *See* Third-Party Complaint [DE 44] ¶¶ 8, 12.

---

[1] Azure also brought other claims that have since been dismissed. *See* Order Granting Defendant's Motion to Dismiss [DE 56].

Pistus obtained the funds via ACH (Automated Clearing House) transfers from Azure's account. *Id.* ¶ 10. To initiate the transfers, Pistus used Azure's routing and bank account numbers, and it warranted to BANA that it had the authority to receive the funds. *Id.* ¶¶ 10-11. Because Azure is pursuing BANA to recover the funds transferred out of Azure's account, BANA has filed the Third-Party Complaint bringing a common law indemnity claim against Pistus on the basis that Pistus, not BANA, is at fault to the extent the transfers were not authorized by Azure. Pursuant to the Motion, Pistus seeks dismissal of BANA's indemnity claim.

## LEGAL STANDARD

At the pleading stage, a complaint must contain "a short and plain statement of the claim showing the [plaintiff] is entitled to relief." Fed. R. Civ. P. 8(a). Although Rule 8(a) does not require "detailed factual allegations," it does require "more than labels and conclusions"; a "formulaic recitation of the cause of action will not do." *Bell Atl. Corp v. Twombly*, 550 U.S. 544, 555 (2007). To survive a motion to dismiss, "factual allegations must be enough to raise a right to relief above the speculative level" and must be sufficient "to state a claim for relief that is plausible on its face." *Id.* at 555, 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "The mere possibility the defendant acted unlawfully is insufficient to survive a motion to dismiss." *Sinaltrainal v. Coca-Cola Co.*, 578 F.3d 1252, 1261 (11th Cir. 2009) (citing *Iqbal*, 556 U.S. at 679)).

In considering a Rule 12(b)(6) motion to dismiss, the court's review is generally "limited to the four corners of the complaint." *Wilchombe v. TeeVee Toons, Inc.*, 555 F.3d 949, 959 (11th Cir. 2009) (quoting *St. George v. Pinellas Cnty.*, 285 F.3d 1334, 1337 (11th Cir. 2002)). Courts must accept the factual allegations in the complaint as true and view them in the light most

favorable to the plaintiff. *Cambridge Christian Sch., Inc. v. Fla. High Sch. Athletic Ass'n, Inc.*, 942 F.3d 1215, 1229 (11th Cir. 2019); *Tims v. LGE Cmty. Credit Union*, 935 F.3d 1228, 1236 (11th Cir. 2019). But "[c]onclusory allegations, unwarranted deductions of facts or legal conclusions masquerading as facts will not prevent dismissal." *Jackson v. Bellsouth Telecomms.*, 372 F.3d 1250, 1262-63 (11th Cir. 2004) (citation omitted); *see also Iqbal*, 556 U.S. at 678 ("[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.").

## ANALYSIS

BANA has plausibly alleged a common law indemnity claim against Pistus. "Indemnity lies to insulate the passive participant from claims which rightly should be paid by the active wrongdoer. Stated differently, an indemnity right exists when one is left open to liability due to the wrongful acts of another." *Time Ins. Co. v. Neumann*, 634 So. 2d 726, 729 (Fla. 4th DCA 1994) (citing *Stuart v. Hertz*, 351 So. 2d 703 (Fla. 1977); *Houdaille Indus. v. Edwards*, 374 So. 2d 490 (Fla. 1979)). A common law indemnity claim "shifts the entire loss from one who, although without active negligence or fault, has been obligated to pay, because of some vicarious, constructive, derivative, or technical liability, to another who should bear the costs because it was the latter's wrongdoing for which the former is held liable." *Fla. Peninsula Ins. Co. v. Ken Mullen Plumbing, Inc.*, 171 So. 3d 194, 196 (Fla. 1st DCA 2015) (quoting *Houdaille*, 374 So. 2d at 493). A party must plausibly allege the following three elements to state a claim for common law indemnity under Florida law: "1) that he is wholly without fault; 2) that the party from whom he is seeking indemnity is at fault; and 3) that he is liable to the injured party only because he is vicariously, constructively, derivatively, or technically liable for the wrongful acts of the party

from whom he is seeking indemnity." *Id.* (quoting *Fla. Farm Bureau Gen. Ins. Co. v. Ins. Co. of N. Am.*, 763 So. 2d 429, 435 (Fla. 5th DCA 2000)).

Here, accepting the allegations of the Third-Party Complaint as true, and viewing them in the light most favorable to BANA (as the Court must at this stage), Pistus is the active wrongdoer, and BANA is left open to liability to Azure due to the wrongful acts of Pistus. Nevertheless, Pistus appears to primarily raise two (related) arguments in the Motion. It contends that dismissal is required because BANA failed to allege facts showing: (1) the existence of a "special relationship"; and (2) that any liability from BANA to Azure is solely based on BANA being vicariously liable for Pistus's actions. Pistus's arguments fail.

First, although Pistus is correct that a special relationship must exist for a common law indemnity claim to be successful, *see Tsafatinos v. Fam. Dollar Stores of Fla., Inc.*, 116 So. 3d 576, 581 (Fla. 2d DCA 2013), Pistus gives short shrift to what the term "special relationship" entails. The term "merely describes a relationship which makes a faultless party 'only vicariously, constructively, derivatively, or technically liable for the wrongful acts' of the party at fault." *Fla. Peninsula Ins.*, 171 So. 3d at 196 (quoting *Diplomat Props. Ltd. P'ship v. Tecnoglass, LLC*, 114 So. 3d 357, 362 (Fla. 4th DCA 2013)).[2] Here, based on the allegations of the Third-Party Complaint, any liability on the part of BANA would be merely *technical* on account of the wrongful acts of Pistus.

---

[2] *See also In re Mills*, 605 B.R. 549, 557 n.5 (Bankr. S.D. Fla. 2019) ("The requirement of proving a 'special relationship' is not a separate and distinct element of Florida common law indemnity, but rather is inherent in the element that [a] party 'is liable to the injured party only because he is vicariously, constructively, derivatively, or technically liable for the wrongful acts of the party from whom he is seeking indemnity.'").

Second, while Pistus is correct that the Third-Party Complaint does not demonstrate that BANA is *vicariously* liable for Pistus's actions, Pistus ignores the terms that follow "vicariously" – that is, "constructively, derivatively, or technically."  Of these four terms,

> only "vicarious liability" is a recognized term of art, and it is typically used to describe liability imposed by agency law. The Florida Supreme Court's analysis in *Houdaille* strongly suggests that the other three terms, "constructive," "derivative," and "technical," *are meant merely to capture the concept that the party seeking indemnity must be without fault.*

*Fla. Peninsula Ins.*, 171 So. 3d at 196 (quoting *Auto-Owners Ins. Co. v. Ace Elec. Serv., Inc.*, 648 F. Supp. 2d 1371, 1379 (M.D. Fla. 2009)) (emphasis added); *see also id.* at 196 n.2.  In the Third-Party Complaint, not only does BANA allege that it is "without fault" (*see* ¶¶ 13, 16), but the allegations plausibly support BANA's without-fault contention by showing that the funds at issue were transferred to Pistus solely because Pistus improperly warranted to BANA that it was authorized to obtain the funds.  The facts here squarely fit within the requirements for common law indemnity.

In support of its arguments, Pistus contends that *Houdaille* is analogous.  But *Houdaille* dealt with a remarkably different fact pattern.  *See* 374 So. 2d at 492 ("The issue before us is whether a manufacturer of a defective product that contributes to an on-the-job injury of a workman may seek common law indemnity from the employer of the injured workman.").  Moreover, none of the other cases the parties cite are factually analogous.  Nonetheless, I have located two Florida cases containing analogous facts.  *See Cap. Bank v. Meyers*, 573 So. 2d 120 (Fla. 3d DCA 1991); *Larjim Mgmt. Corp. v. Cap. Bank*, 554 So. 2d 587 (Fla. 3d DCA 1989).

Both *Larjim* and *Meyers* support BANA's position.  In *Larjim*, an individual endorsed and deposited checks issued to a partnership into a different entity's account without authorization. 554 So. 2d at 588.  The checks were drawn on a Barnett Bank account and deposited at Capital

5

Bank. *Id.* Barnett Bank and the partnership sued Capital Bank seeking reimbursement, and Capital Bank then sued the individual who endorsed/deposited the checks and the entity that received the funds for indemnification. Capital Bank prevailed on its indemnification claim. In finding for Capital Bank, the court explained that "Capital Bank's liability to Barnett Bank and the Partnership resulted not from any wrongful act of its own, but from [the individual's] unauthorized conduct." *Id.* at 588-89. In doing so, the court rejected the individual's argument that he did not have a relationship with Capital Bank that could give rise to a claim for indemnification. *Id.* at 588.

In *Meyers*, Capital Bank was sued for permitting an unauthorized withdrawal of funds. 573 So. 2d at 120. In a third-party action, Capital Bank sought indemnification from two individuals "who had finagled the bank to distribute [the funds] to them." *Id.* at 121. The court reversed the entry of summary judgment against Capital Bank, finding *Larjim* to be "directly applicable." *Id.*

Like the third-party defendants in *Larjim* and *Meyers*, only Pistus is at fault for the alleged unauthorized transfers in this case (taking the allegations in the Third-Party Complaint as true), and like the third-party plaintiff in those cases (Capital Bank), BANA is seeking indemnification from the entity that wrongfully received the funds. BANA may be technically required to reimburse Azure under BANA's contract with Azure, but BANA would have never been obligated to reimburse Azure but for Pistus's alleged wrongdoing. It is unclear from *Larjim* and *Meyers* what legal claim was asserted against Capital Bank in those cases. Nonetheless, even if the Court were to assume that non-contract claims were asserted against Capital Bank in *Larjim* and *Meyers*, the fact that Azure is pursuing BANA for breach of contract in this case is of no moment. *See Diplomat Props.*, 114 So. 3d at 360 ("[A] party's liability for breach of contract can form the basis for an indemnification claim against a third party." (citations omitted)); *see also Mortg.*

6

*Contracting Servs., LLC v. J & S Prop. Servs. LLC*, No. 8:17-CV-1566-T-36CPT, 2018 WL 3219386, at *4 (M.D. Fla. July 2, 2018).

Ultimately, the facts of the Third-Party Complaint, viewed in the light most favorable to BANA, show that BANA is wholly without fault, that Pistus is at fault, and that any liability on the part of BANA is merely technical liability caused by the wrongful acts of Pistus. Therefore, BANA has plausibly stated a common law indemnity claim against Pistus.

## CONCLUSION

For the reasons discussed above, I respectfully **RECOMMEND** that the District Court **DENY** the Motion [DE 60].

The parties will have fourteen (14) days from the date of being served with a copy of this Report and Recommendation within which to file written objections, if any, with the Honorable Rodolfo A. Ruiz, II, United States District Judge. Failure to timely file objections shall bar the parties from a *de novo* determination by the District Judge of an issue covered in the Report and shall bar the parties from attacking on appeal unobjected-to factual and legal conclusions contained in this Report except upon grounds of plain error if necessary in the interest of justice. *See* 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140, 149 (1985); *Henley v. Johnson*, 885 F.2d 790, 794 (11th Cir. 1989); 11th Cir. R. 3-1.

**DONE AND SUBMITTED** in Fort Lauderdale, Florida this 9th day of March 2022.

Jared M. Strauss
United States Magistrate Judge